IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**CHARLES BREEDLOVE**                                                                         **PLAINTIFF**

V.                                    **CASE NO. 3:21-CV-3054**

**KILOLO KIJAKAZI, Acting Commissioner**
**Social Security Administration**                                                      **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Currently before the Court is the Report and Recommendation ("R&R") (Doc. 22) of the Honorable Christy Comstock, United States Magistrate Judge for the Western District of Arkansas, filed in this case on June 16, 2022. The Magistrate Judge recommends affirming the Administrative Law Judge's ("ALJ") decision to deny Plaintiff Charles Breedlove's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. Mr. Breedlove filed objections to the R&R (Doc. 23), and the Court has now reviewed the entire case *de novo*, paying particular attention to those findings or recommendations to which objections were made. *See* 28 U.S.C. § 636(b)(1)(C). For the reasons stated herein, the Court agrees with the Magistrate Judge's conclusions, overrules Mr. Breedlove's objections, and **ADOPTS THE R&R IN ITS ENTIRETY**.

## I.  OBJECTIONS

### A.  Failure to Review Important Medical Evidence

#### *1. Cardiac Condition*

Mr. Breedlove contends the R&R failed to meaningfully consider all the important medical evidence in the record, particularly with respect to his cardiac condition. Mr. Breedlove claims the Magistrate Judge—and the ALJ—ignored the fact that he was assessed with "severe pericardial effusion with symptomatic tamponade most likely with

a swinging heart," and that an EKG "showed his ejection fraction to be 40 or 45 percent." (Doc. 23, p. 4). According to Mr. Breedlove, this is a significant diagnosis that means he is completely disabled.

Mr. Breedlove accuses the Magistrate Judge of skipping over this diagnosis in favor of cherry-picking facts from the medical record to support the ALJ's findings. Mr. Breedlove also complains generally that the ALJ made erroneous findings in the first place because he misunderstood the significance of the medical evidence; after all, the ALJ is not a doctor. According to Mr. Breedlove, "[I]t is unlikely that the ALJ knows what a Cardiac Tamponade is or is familiar with the implications that may have on a claimant's functioning." *Id.* at p. 9. As for the Magistrate Judge, Mr. Breedlove observes disparagingly that she only gave the ALJ "a pass" on his faulty reasoning "because he used the correct boilerplate language in the decision." *Id.* at p. 8.

Both the ALJ and the Magistrate Judge noted in their opinions that Mr. Breedlove has suffered for many years with various heart ailments. However, Mr. Breedlove's objection cites to a cardiac diagnosis that took place more than 20 years ago. Shortly after that diagnosis, he underwent a pericardial drainage procedure to address the cardiac tamponade. *See* 12-10, pp. 117–18. Over the next several years, Mr. Breedlove underwent other cardiac procedures to place stents and open blocked arteries. Finally, on April 22, 2019, he underwent major heart surgery to correct a blocked artery at the site of previously placed stents. (Doc. 12-9, p. 56). This procedure yielded positive results, and since that time, Mr. Breedlove has not suffered from any significant cardiac complaints. In view of this evidence, the Court could easily find that Mr. Breedlove has attempted to mislead the Court by claiming that his diagnosis of "severe pericardial

2

effusion" and "a swinging heart" is a *current* diagnosis when it was *made in 2001*. *See id.* at p. 72.

In reviewing the medical record, the Court is persuaded that the Magistrate Judge has accurately summarized Mr. Breedlove's cardiac condition, particularly post-surgery. Further, the Court agrees with the R&R's finding that "[t]he ALJ thoroughly discussed Plaintiff's medical records," which, post-surgery, "consistently reported a heart with regular rhythm and rate; [and] clear lungs to auscultation, bilaterally." (Doc. 22, p. 22). The Court therefore **OVERRULES** Mr. Breedlove's objection regarding the accuracy and completeness of the R&R's summary of his heart condition. There is substantial evidence to show that Mr. Breedlove's cardiac problems are not so disabling that he cannot participate in any gainful employment.

## *2. Back and Neck Pain*

Next, Mr. Breedlove objects to the R&R's conclusion that he experienced significant, lasting pain relief due to injections, medication, or other treatment of his back and neck. He claims the medical evidence actually shows that he has never experienced pain relief and still suffers from severe back and neck pain, fatigue, weakness and numbness in his lower extremities, leg spasms, and numbness in his hands. (Doc. 23, p. 11). He further claims "he cannot lift without being in physical pain or walk," and the Magistrate Judge ignored all this when reviewing the ALJ's findings. *Id.*

Tellingly, Mr. Breedlove does not rely on doctors' reports or objective medical testing in making this objection. Instead, he cites to various self-reports of pain and physical limitations. First, he points to a written declaration he filled out on September 8, 2020, in which he claims he has problems walking, standing, sitting, lifting, pushing,

3

pulling, reaching, carrying or handling, and sleeping. *See* Doc. 12-8, p. 4. In that same declaration, he claims he "can only sit for 1/2 hour at a time, stand for 15 minutes, . . . walk about 400 feet, . . . can't lift more than 15–20 lbs, . . . sleep[s] . . . only 30 min–2 hrs. at a time, [and has] terrible leg spasms [that] wake [him] up." *Id.* He also cites to a report he filled out on May 16, 2019, in which he claims he "can't work or can only do light duty." (Doc. 12-7, p. 26). He notes in that report that he has no problems caring for himself, making meals, going grocery shopping twice a month for two hours at a time, and doing laundry. *Id.* Further, he claims he can no longer "work a full physical 8 hours a day," for example, "cut[ting] trees, mov[ing] mobile homes, mow[ing] a whole yard with a push mower, [and] scrap[ping] metal]." *Id.* at p. 27. However, later in the same May 2019 report, he claims he can only walk "5 feet" before needing to stop and rest for "1 hour"—which does not correlate with his claim that he spends hours on his feet cooking, shopping, and doing laundry. *See id.* at p. 31. Finally, Mr. Breedlove cites to his own testimony at the appeal hearing before the ALJ on September 30, 2020. During the hearing, he testified that he suffers from severe back pain and leg spasms from standing or sitting for any significant length of time, usually 20–30 minutes. *See* Doc. 12-2, pp. 44–46. He further testified that his right and left arms tingle as though they are going numb and that this condition lasts "like 15/20 minutes" and has caused him to drop things he was holding. *Id.* at p. 49.

The ALJ noted in his opinion that Mr. Breedlove claimed to suffer from constant back, leg, arm, and neck pain and stated he could not stand or walk for any longer than 20–25 minutes without pain. *See* Doc. 12-2, p. 16. The ALJ also recorded Mr. Breedlove's reports of leg spasms and tendency to drop items, such as a coffee cup on

one occasion, due to arm numbness and weakness. *Id.* However, after evaluating this medical evidence, the ALJ determined that Mr. Breedlove's claims regarding "the intensity, persistence and limiting effects" of pain and weakness were "not entirely consistent with the medical evidence and other evidence in the record." *Id.* In particular, the ALJ "considered but did not find persuasive statements and testimony of the claimant in relation to his allegations of disabling impairments and limitations thereof, based upon the lack of support from the objective medical evidence and the inconsistency when compared to the longitudinal medical evidence record." *Id.* at 20. The law is clear that questions of fact, including the credibility of a plaintiff's subjective testimony, are primarily for the ALJ to decide, not the courts. *See Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992); *Benskin v. Bowen,* 830 F.2d 878, 882 (8th Cir. 1987).

Turning to the medical record, it reflects that Mr. Breedlove injured his arm in August 2019, when he was tearing down a mobile home for scrap metal—during the same time period he claimed he was completely disabled and could not perform any strenuous labor. The record also indicates that in early 2020, Mr. Breedlove was prescribed medication for muscle spasms and two separate branch nerve blocks, which improved his pain and eased his mobility, per his report to his doctor. *See* Doc. 12-13, pp. 35, 41. He then underwent a lumbar medial branch neurotomy in May 2020, which was successful. *See* Doc. 12-14, p. 32. He was treated conservatively for his pain with physical therapy—which he discontinued voluntarily without explanation—and with medications and occasional lumbar injections. He reported that the medication gabapentin seemed to control his pain and muscle spasm issues. *Id.* at p. 79.

Mr. Breedlove correctly states that a claimant's subjective complaints of pain are to be taken seriously. However, "If an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so, we will normally defer to that judgment." *Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990). Upon review of the medical evidence, the Court agrees with the Magistrate Judge that there is substantial evidence in the record to support the ALJ's conclusion that Mr. Breedlove's complaints of pain are not so disabling that he cannot work in any capacity.

"Substantial evidence is that which a reasonable mind might accept as adequate to support the Secretary's conclusion." *Whitehouse v. Sullivan*, 949 F.2d 1005, 1007 (8th Cir. 1991). The Court's role here is to examine whether the medical evidence as a whole reasonably supports the ALJ's decision. *McClees v. Shalala*, 2 F.3d 301, 302 (8th Cir. 1993). Given the Court's review of the medical records, the ALJ's specific credibility assessments of Mr. Breedlove, and the fact that none of Mr. Breedlove's treating physicians expressed any opinion on his ability to work, the Court is persuaded that the ALJ's findings as to Mr. Breedlove's physical limitations are reasonable and supported by the evidence. The ALJ sufficiently considered Mr. Breedlove's complaints of disabling pain but expressly discredited them for good cause because they were inconsistent with the evidence as a whole. The Court declines to disturb the ALJ's decision, and this objection is therefore **OVERRULED**.

### B. Automatically Qualifying for Disability, Per the Guidelines

Mr. Breedlove's next objection concerns the Social Security Administration's Medical Vocational Guidelines. He claims that under those Guidelines, anyone who is over 50 years old, has not graduated from high school, and can perform only sedentary,

unskilled work, must be deemed disabled without further inquiry. Implicit in Mr. Breedlove's objection is the suggestion that the ALJ wrongly determined his RFC, or residual functional capacity. Mr. Breedlove believes his RFC should qualify him to do, at most, only *sedentary* work. However, the ALJ determined that Mr. Breedlove's RFC qualified him to perform *light exertional* work. Accordingly, the Court must critically examine the ALJ's RFC assessment in order to rule on Mr. Breedlove's objection.

At the time of the ALJ's disability hearing, Mr. Breedlove was 51 years old, had obtained a tenth-grade education, and had previously performed only unskilled labor (as a house mover, sander, tire repairer, automobile service station mechanic, bagger, lubrication servicer, and tree cutter). *Id.* at pp. 2–3. The ALJ characterized this past work as requiring "medium and heavy exertion." (Doc. 12-2, p. 21). Next, the ALJ consulted with a vocational expert and two agency physicians who reviewed Mr. Breedlove's medical file. With that information in hand, the ALJ concluded that the most appropriate RFC for Mr. Breedlove, given his complaints of pain and severe medical limitations, was light exertional work, coupled with specific limitations on bending, stooping, and squatting. (Doc. 12-2, p. 15).

The Court has reviewed the vocational expert's recommendations, the recommendations of the reviewing physicians, and the ALJ's credibility determinations and finds the ALJ's RFC is supported by substantial evidence. In view of the fact that Mr. Breedlove's appropriate RFC is for light exertional work, rather than sedentary work, his request for an "automatic" disability finding is rejected. According to Social Security's regulations, Mr. Breedlove is categorized as "closely approaching advanced age." 20 C.F.R. § 416.963. He has obtained a "limited education," since he only completed the

tenth grade.  20 C.F.R. § 404.1564.  The regulations are clear that claimants, like Mr. Breedlove, who are "closely approaching advanced age," possessing "limited education," and qualified to perform light exertional work are not automatically considered disabled, regardless of the nature of their previous work experience.  See 20 C.F.R. § 404, Subpt. P., App. 2, §§ 202.10–202.12.  This objection is **OVERRULED**.

### C. Disregarding Letters Provided by Friends and Family

Mr. Breedlove contends that the letters submitted by his family to the ALJ were disregarded out of hand simply because the sentiments expressed in those letters did not fit in with the ALJ's predetermined conclusion that Mr. Breedlove was not disabled.  In Mr. Breedlove's view, the ALJ's treatment of the letters is legal error that requires remand, and in support of that argument, he cites to Smith v. Heckler, 735 F.2d 312, 317 (8th Cir. 1984).  In Smith, the Eighth Circuit criticized the ALJ for failing to consider the subjective testimony of family members and others.  However, the ALJ in Smith—as contrasted with the ALJ in the case at bar—made no credibility findings concerning two witnesses' testimony and "was completely silent about the three affidavits filed by witnesses who observed [the claimant] at work and who corroborated testimony that he was unable to work without constant supervision."  Id. at 316–17.  The holding in Smith is that an ALJ must specifically discuss the testimony of witnesses and express credibility determinations before disregarding the witnesses' claims.  Id. at 317.

The Court has now reviewed Mr. Breedlove's supporting letters, submitted by his step-daughter, brother-in-law, and mother of his daughter-in-law.  See Doc. 12-7, pp. 80–91.  The ALJ specifically discussed each of these letters in his opinion, and he assessed the credibility of each of these witnesses.  The ALJ determined that the letters expressed

"conclusory statements" about Mr. Breedlove's disability without providing "the functional and/or objective basis for their opinions." (Doc. 12-2, p. 20). Mr. Breedlove may not agree with the ALJ's conclusions, but the ALJ has adequately complied with the law in considering and then disregarding the letters. This objection is **OVERRULED**.

### D. Applying the Wrong Legal Standard

Mr. Breedlove argues that the ALJ applied the substantial-evidence standard when assessing the medical evidence but should have instead applied the preponderance-of-the-evidence standard. Mr. Breedlove does not go into any detail as to why he believes the ALJ used the wrong legal standard. Instead, he simply assumes the wrong standard must have been applied because, generally, "the style of writing seen in most of these decisions demonstrates that the agency is simply searching for substantial evidence to support a denial." (Doc. 23, p. 17).

The Court's inclination is that this objection is too vague to require a ruling. But, to the extent a ruling is necessary, the objection is **OVERRULED**. Mr. Breedlove points to nothing specific in the ALJ's opinion that would lead anyone to suspect the ALJ applied the wrong legal standard when evaluating the medical evidence.

### E. Failure to Substantively Assess the Medical Evidence

The next objection Mr. Breedlove makes concerns the ALJ's treatment of the medical evidence—and the Magistrate Judge's failure to require the ALJ to "show his work" and explain how each medical opinion is supported by objective evidence and is

consistent with other evidence from medical and non-medical sources, as required by 20 C.F.R. § 404.1520c.

Having reviewed the ALJ's opinion in detail, the Court believes he thoroughly considered the medical evidence and set forth his reasoning as to why the objective evidence supported or did not support each conclusion. He also assessed the medical evidence chronologically and by ailment and discussed how Mr. Breedlove's various medical conditions were treated over time. The ALJ therefore complied with the regulation cited in the objection, and the objection is **OVERRULED**.

### F. No Treating Physicians' Assessments of Functional Capabilities

Mr. Breedlove admits that none of his treating physicians assessed his functional capabilities or otherwise opined about his ability to perform certain job tasks. In the absence of such assessments, the ALJ asked two agency physicians to review Mr. Breedlove's medical file and provide their recommendations. Mr. Breedlove suggests this was erroneous and that the case should be remanded with instructions for the ALJ "to seek additional information from the treating physician[s]." (Doc. 23, p. 21).

In reviewing the record, it is clear that Mr. Breedlove's treating physicians were asked to describe his "ability to do work activities such as sit, stand, walk, lift, carry, handle objects, hear, speak, and travel," as well as provide copies of medical records. *See, e.g.,* Doc. 12-9, pp. 10, 48, 65, 149, 163, 189. The doctors' failure to respond with suggestions for limitations implies they have no such suggestions to offer. Moreover, the ALJ possesses the authority "to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.

2001). The Court is not aware of any reason why the ALJ cannot make RFC determinations by examining the treating physicians' letters and objective testing data—even if those physicians do not specifically opine on the claimant's functional ability to perform work tasks. Furthermore, ALJs are required to consider findings offered by state agency medical consultants, *see* 20 C.F.R. § 404.1513a(b)(1), and it appears the ALJ appropriately did so here. In view of the above reasoning, the Court **OVERRULES** the objection.

### G. Constitutional Arguments

Mr. Breedlove's last objection is that the Magistrate Judge erred in refusing to consider the constitutional arguments Mr. Breedlove raised in his brief. He maintains that the agency's system for determining disability benefits results in arbitrary and capricious decisions and unequal treatment for similarly situated claimants. From Mr. Breedlove's point of view, a disability claimant's chance of success is mostly dependent on which ALJ is drawn rather than the merits of the individual claim. He believes the agency's rules, policies, and procedures "are not sufficiently specific to insure reasonably uniform decision making." (Doc. 23, p. 24). As a result, he believes his due process and equal protection rights have been violated.

The Court **OVERRULES** the objection. Mr. Breedlove's sweeping criticism of the unfairness of the entire disability framework is not specific enough to constitute a true constitutional challenge warranting further inquiry.

## II. CONCLUSION

As all objections are **OVERRULED**, **IT IS ORDERED** that the R&R (Doc. 22) is **ADOPTED IN ITS ENTIRETY**, and the final decision of the ALJ to deny the Plaintiff benefits is **AFFIRMED**. Judgment will be entered accordingly.

**IT IS SO ORDERED** on this 29th day of September, 2022.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE